IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BILLIE JO GARBER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-190-ALM-KPJ |
| | § | |
| **MARTIN J. O'MALLEY,** | § | |
| *Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Martin J. O'Malley's, Commissioner of Social Security, (the "Commissioner") Motion to Dismiss (Dkt. 12), to which Plaintiff Billie Jo Garber ("Plaintiff") filed a response (the "Response") (Dkt. 16). For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 12) be **GRANTED IN PART** and **DENIED IN PART**.

I.   **BACKGROUND**

On May 17, 2010, Plaintiff was found disabled and entitled to receive disability insurance benefits.[1] Tr. 14. On September 23, 2015, the Social Security Administration ("SSA") mailed three notices of overpayment to Plaintiff's address. Tr. 77–88. Two notices were addressed to Plaintiff informing her of an overpayment in the amount of: (1) $34,553.10 for herself; and (2) $14,695.00

---

[1] Document 12-1 comprises the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the upper right-hand corner of each page, rather than to the CM/ECF document and page numbers.

1

for AG, Plaintiff's minor son.[2] Tr. 77, 81. The third notice was addressed to JG, Plaintiff's adult son, informing him of an overpayment in the amount of $2,562.00 attributable to his benefits. Tr. 85. All three notices informed the recipient of the right to appeal and the right to request waiver of the overpayment determination. Tr. 78, 82, 86.

On November 15, 2015, Plaintiff filed a request for reconsideration, listing herself as the claimant. Tr. 95. On June 6, 2017, the SSA issued a notice of reconsideration determination, in which the SSA informed Plaintiff that the overpayment of $20,302.39 on her account and the overpayment of $13,823.00 on AG's account were accurate.[3] Tr. 127–29. The notice of reconsideration informed Plaintiff of her right to request a hearing within sixty days of receipt of the letter. Tr. 128.

On July 28, 2017, Plaintiff filed a second request for reconsideration, listing herself as the claimant. Tr. 130. Attached to the request for reconsideration is a letter from Plaintiff, wherein she specifies that she is contesting the overpayment amounts of $20,302.39 and $13,823.00 for herself and AG, respectively. Tr. 131. On August 12, 2018, the SSA issued a second notice of reconsideration, wherein the SSA dismissed Plaintiff's second request for reconsideration based

---

[2] Plaintiff's son, AG, was a minor at the time of the initial overpayment notification, and thus, Plaintiff received the notification for the overpayment attributable to AG, as AG's representative payee. *See* Dkt. 16 at 1–2; *see also* 20 C.F.R. 404.2010(b) ("Generally, if a beneficiary is under age 18, we will pay benefits to a representative payee."). The overpayment notification was addressed to "BillieJo Garber for [AG]" and stated: "We are writing to give you new information about the child's benefits which you receive on this Social Security record." Tr. 77.

[3] In the June 6, 2017, notice of reconsideration, the SSA explains that Plaintiff filed a request for expedited reinstatement of disability benefits in September 2015. Tr. 127. This request was approved, and Plaintiff's benefits were retroactively reinstated back to September 2014. Tr. 127. In the notice of reconsideration, the SSA informed Plaintiff:

> Because [her] wages from [her] job were substantial for February 2014 through August 2014, this means that [she] should not have ever received benefits for these months. Since [AG] is also receiving benefits on [Plaintiff's] record, the overpayment months apply to him as well. In [conclusion], [Plaintiff's] overpayment of $20,302.39 is accurate as well as [AG's] overpayment of $13,823.00.

Tr. 127–28. The Administrative Record does not include any further information regarding the reduction of the overpayment amount, and neither party has briefed the difference. Ultimately, the specific amount of overpayment is not essential to deciding the issues currently before the Court.

2

on the doctrine of res judicata because "the same issues and facts [were] involved" as the first request for reconsideration. Tr. 142–43.

On October 18, 2018, Plaintiff filed a request for hearing by an administrative law judge, wherein Plaintiff stated: "I disagree with the determination because the amount shown as overpayment is incorrect. My 2015 and 2016 1099 reflect over $20,000 paid to social security. Also my sons [sic] 2015 1099 reflects $1744 paid to social security." Tr. 156–57. Although the request for hearing was determined to be untimely, the SSA forwarded the hearing request to the Administrative Law Judge for action. *See* Tr. 233.

On October 18, 2018, Plaintiff also filed a request for waiver of overpayment recovery, identifying herself as the overpaid person making the request. Tr. 148–55. On January 29, 2019, the SSA issued an overpayment information notification, wherein the SSA stated: "Based on the facts we have now, we cannot approve your request" to "waive the collection of your overpayment of $20,302.39." Tr. 160–61. The overpayment information notification further informed Plaintiff that she had the right to attend a personal conference on February 11, 2019, before it made a final decision regarding whether Plaintiff must pay back the overpayment. Tr. 160.

On March 11, 2019, the SSA issued an overpayment information notification informing Plaintiff that it would waive $6,609.39 of the overpayment; however, Plaintiff would need to pay the remaining $13,693.00. Tr. 164–66. The overpayment information notification informed Plaintiff of her right to request a hearing before an administrative law judge within sixty days of receipt of the letter. Tr. 165. On May 10, 2019, Plaintiff requested a hearing with an administrative law judge. Tr. 230–32.

On August 23, 2021, a telephone hearing was held before Administrative Law Judge Joseph Liken ("ALJ Liken"). Tr. 26. At the hearing, Plaintiff's counsel identified two issues before

ALJ Liken: (1) the overpayment determination; and (2) waiver. *See* Tr. 30. On October 27, 2021, ALJ Liken issued a fully favorable decision waiving the SSA's recovery of the remaining $13,693.00 overpayment associated with Plaintiff's account. Tr. 11–22. In the decision, ALJ Liken found that Plaintiff had been overpaid benefits in the amount of $13,693.00 but concluded "that [Plaintiff] was without fault in causing the overpayment; that recovery of the overpayment would defeat the purposes of Title II of the Social Security Act; and that recovery of the overpayment in the amount of $13,693.00 [was] . . . waived." Tr. 16.

On December 28, 2021, Plaintiff requested review of ALJ Liken's decision. Tr. 279–80. On February 3, 2022, Plaintiff submitted a letter to the SSA Appeals Council requesting review because ALJ Liken's decision did not address the overpayment due for AG and JG, among other issues. Tr. 282–83.

On January 3, 2023, the Appeals Council denied Plaintiff's request for review because there had been no "initial determination" on "the issue of waiver of the children's overpayment." Tr. 1. Thus, "the issue of waiver of the children's overpayments was not subject to consideration by [ALJ Liken]." Tr. 1. The Appeals Council further found that the other issues raised on appeal "were also not subject to consideration by [ALJ Liken]." Tr. 1. The Appeals Council stated: "If you wish to have the [SSA] consider waiver of the children's overpayments, you need to visit your local Social Security Office at the address listed in this notice to complete the necessary forms. You should bring a copy of the fully favorable hearing decision with you when you visit." Tr. 1.

On March 9, 2023, Plaintiff, proceeding *pro se*, filed the Complaint (Dkt. 1), stating that she sought judicial review of the Commissioner's January 3, 2023, decision. Dkt. 1 at 1. In the Complaint (Dkt. 1), Plaintiff identified herself as the claimant and wage earner and identified the claim as a waiver of overpayment. *Id.* Plaintiff further stated that she exhausted her administrative

remedies in this matter. *Id.* On July 10, 2023, the Commissioner filed the Motion to Dismiss (Dkt. 12), to which Plaintiff filed the Response (Dkt. 16) with the representation of counsel.[4]

## II. LEGAL STANDARD

Rule 12(b)(1) provides that a party may assert by motion the defense of lack of subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *Id.* (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 118, 1187 (2d Cir. 1996)). A claim of sovereign immunity is jurisdictional. *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 762 (5th Cir. 2023) (quoting *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

---

[4] On October 25, 2023, the Court granted Plaintiff additional time to respond to the Motion to Dismiss (Dkt. 12). *See* Dkt. 17. Accordingly, Plaintiff's response is timely.

A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 F. App'x 406, 408–09 (5th Cir. 2016) (per curiam) (citing *Ramming*, 281 F.3d at 161). Addressing Rule 12(b)(1) arguments first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

### III.   ANALYSIS

In the Motion to Dismiss (Dkt. 12), the Commissioner asserts two arguments: (1) the Court should dismiss the Complaint (Dkt. 1) pursuant to Rule 12(b)(1) because the Court lacks jurisdiction to review the SSA's fully favorable overpayment waiver determination; and (2) any challenges to the waiver of overpayments on behalf of AG or JG should be dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to exhaust her administrative remedies. Dkt. 12 at 4, 7. In the Response (Dkt. 16), Plaintiff argues that (1) Plaintiff's claim regarding the overpayment determination attributable to AG was "protectively filed"; and (2) Plaintiff was harmed by the failure to adjudicate the waiver of overpayment as to AG. Dkt. 16 at 1–3. Plaintiff concedes that she did not ask for a waiver of overpayment as to JG and that she could not have done so because he was nineteen at the time of the notification. *Id.* at 3.

While the Commissioner has moved to dismiss under Rule 12(b)(1) and Rule 12(b)(6), both arguments asserted therein concern the Court's subject matter jurisdiction over the cause of action. The Commissioner's first argument concerning judicial review of Plaintiff's fully favorable overpayment waiver implicates Plaintiff's standing, an element of the Case or Controversy Clause. *See* U.S. CONST. art. III, § 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue." (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))). The

6

Commissioner's second argument concerning Plaintiff's failure to exhaust her administrative remedies also implicates the Court's subject matter jurisdiction. *Stump v. Barnhart*, 387 F. Supp. 2d 686, 689 (E.D. Tex. 2005) ("A claimant's failure to exhaust all administrative remedies before filing an appeal deprives the court of subject matter jurisdiction." (citing *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000))). Accordingly, the Court considers whether Plaintiff (1) has standing to seek review of the overpayment attributable to her, JG, and AG; and (2) has exhausted her administrative remedies as to the overpayment attributable to AG.

A. **Standing**

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines*, 521 U.S. at 818. This requirement, like other jurisdictional requirements, is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996) (citations omitted). The Supreme Court "insist[s] on strict compliance with this jurisdictional standing requirement." *Raines*, 521 U.S. at 819 (citing *Allen v. Wright*, 468 U.S. at 752). "Even when standing is not raised by the parties, the Court must, where necessary, raise the issue *sua sponte*." *Reed v. Rawlings*, No. 18-cv-1032, 2018 WL 5113143, at *3 (N.D. Tex. Oct. 19, 2018) (citing *Collins v. Mnuchin*, 896 F.3d 640, 654 n.83 (5th Cir. 2018)).

To meet the standing requirement, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines*, 521 U.S. at 818–19 (quoting *Allen*, 468 U.S. at 751); *accord Lujan*, 504 U.S. at 560–61. To satisfy the case-or-controversy requirement, a "plaintiff must show that he has sustained or is

7

immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (cleaned up). "The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between [the plaintiff] and the defendant." *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983). Courts are to assess a plaintiff's "standing to bring each of its claims against each defendant." *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)), *aff'd*, 385 F. App'x 358 (5th. Cir. 2010).

Although the Fifth Circuit does not appear to have considered the issue, other circuits have recognized that "42 U.S.C. § 405(g) 'makes no provision for judicial review of a determination favorable to the complainant.'" *Heller v. Comm'r of Soc. Sec.*, 328 F. App'x 74, 75 (2d Cir. 2009) (quoting *Jones v. Califano*, 576 F.2d 12, 19 (2d Cir. 1978)); *see Buck v. Sec'y of Health and Human Servs.*, 923 F.2d 1200, 1203 (6th Cir. 1991) ("In cases where, as here, the Secretary issues a decision that is fully favorable to the claimant, the claimant cannot seek judicial review."); *see also Wheeler v. Heckler*, 719 F.2d 595, 600 (2d Cir. 1983) ("[J]udicial review of favorable decisions is generally unavailable."). "Plaintiffs generally cannot seek judicial review of such decisions because they lack standing to do so." *Demedeiros v. Berryhill*, No. 17-cv-3118, 2019 WL 1930003, at *4 (N.D. Tex. Mar. 30, 2019), *R. & R. adopted*, 2019 WL 1923915 (N.D. Tex. Apr. 29, 2019) (first citing *Martin v. Colvin*, No. 15-761, 2016 WL 7839131, at *5 (D.D.C. Aug. 4, 2016), *R. & R. adopted*, 2016 WL 7839133 (D.D.C. Aug. 30, 2016); then citing *Cole v. Astrue*, No. 10-cv-4751, 2012 WL 695849, at *3 (E.D.N.Y. Mar. 5, 2012); and then citing *Figueroa v. Astrue*, No. 10-393, 2011 WL 3502394, at *6–*7 (S.D. Tex. July 19, 2011), *R. & R. adopted*, 2011

WL 3502392 (S.D. Tex. Aug. 10, 2011)). In fact, "courts have consistently found that the plaintiff lacked standing because he could not establish that he suffered a concrete injury that was redressable by the court." *Demedeiros*, 2019 WL 1930003, at *4 (citations omitted); *see Ransom o/b/o Ransom v. Berryhill*, No. 16-cv-601, 2018 WL 1221493, at *2 (S.D. Miss. Jan. 29, 2018), *R. & R. adopted*, 2018 WL 1221108 (S.D. Miss. Mar. 8, 2018). However, if the decision gives the petitioner "some, but not all, of the relief she requested," the petitioner can appeal the decision "insofar as it denies her the relief she has sought. Indeed, to hold to the contrary would deny a disability claimant the right to seek reversal." *Forney v. Apfel*, 524 U.S. 266, 271 (1998) (citation omitted).

Here, the Motion to Dismiss (Dkt. 12) and attachments included therein establish that Plaintiff received all the relief requested as to her overpayment. On January 3, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1–4. Therefore, the decision of ALJ Liken is the final decision of the Commissioner for purposes of review by the Court. *See* 20 C.F.R. § 404.981; *see Smith v. Berryhill*, 139 S. Ct. 1765, 1775–76 (2019) ("[A]n action is final if it both (1) marks the consummation of the agency's decision[ ]making process and (2) is one by which rights or obligations have been determined, or from which legal consequences will flow." (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (cleaned up)). ALJ Liken's decision waived the recovery of the overpayment amount of $13,693.00.[5] Tr. 22. As there was no overpayment attributable to Plaintiff after ALJ Liken's decision, Plaintiff received a fully favorable decision on her claims regarding the overpayment attributable to her. Therefore, Plaintiff lacks standing to challenge the overpayment amount attributable to her.

---

[5] The SSA reduced the original overpayment of $34,553.10 twice, resulting in an overpayment amount of $13,693.00 attributable to Plaintiff when ALJ Liken considered the issue of Plaintiff's overpayment and waiver. Tr. 15, 81, 128, 164.

Furthermore, Plaintiff concedes that JG was an adult at the time of the overpayment determination and would have had to file his own request for overpayment determination and waiver. *See* Dkt. 16 at 3. Thus, Plaintiff lacks standing to challenge the overpayment amount attributable to JG. *See Raines*, 521 U.S. at 818 ("We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." (citations omitted)).

However, to the extent the Complaint (Dkt. 1) seeks to challenge the overpayment amount attributable to AG, there is no fully favorable decision—the overpayment amount attributable to AG is outstanding and totals $13,823.00. Furthermore, Plaintiff has standing to challenge the overpayment amount attributable to AG because she was the representative payee for AG, who was a minor at the time of the overpayment. Thus, the Court next considers whether Plaintiff exhausted her administrative remedies as to the overpayment attributable to AG.

**B.  Exhaustion of Administrative Remedies**

Generally, no legal proceeding may be brought against the United States absent a waiver of its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). The terms of that waiver "define that court's jurisdiction to entertain the suit." *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Under 42 U.S.C. § 405(g), the United States has consented to suit by plaintiffs appealing a final decision of the Commissioner made after a hearing. *See Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) ("[A] final decision of the [Commissioner] made after a hearing . . . [is] central to the requisite grant of subject-matter jurisdiction."). To reach a final decision, a claimant must complete the following steps:

1. Present a claim and receive an initial determination about any matter, including whether an overpayment of benefits must be repaid to the SSA, and if dissatisfied;

10

2. Request reconsideration of the initial determination and if dissatisfied;

3. Request a hearing before an ALJ, and if dissatisfied with the decision of the ALJ after the hearing;

4. Request review by the Appeals Council.

*See* 20 C.F.R. §§ 404.900(a)(1)–(4), 404.902. After review by the Appeals Council, the determination is the final decision of the Commissioner and can be appealed to a federal court for review. *Id.* §§ 404.900(a)(5), 404.981; 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . ."). A claimant may not obtain judicial review if he has failed to follow the above steps and receive a final decision from the Appeals Council "because he has failed to exhaust administrative remedies." *Sims*, 530 U.S. at 107 (citation omitted). Exhaustion requires presentment of each claim to the ALJ. *See Jackson v. Apfel*, 234 F.3d 246, 246–47 (5th Cir. 2000) (per curiam) (citation omitted), *vacated on other grounds sub nom. Jackson v. Massanari*, 534 U.S. 801 (2001).

Pursuant to 20 C.F.R. 404.902, an overpayment determination and the waiver of an overpayment determination are two separate claims. *Compare* 20 C.F.R. § 404.902(j) ("any overpayment or underpayment of your benefits"), *with id.* § 404.902(k) ("whether an overpayment of benefits must be repaid to us"). This is further supported by 20 C.F.R. § 404.502a, which explains the process of notifying a claimant of their right to a waiver. Only after "an initial determination is made that more than the correct amount of payment has been made" is the claimant notified of their "right to request reconsideration of the fact and/or amount of the overpayment determination" or "submit forms for . . . waiver requests" of the overpayment. *Id*. § 404.502a. Thus, a claimant that wishes to challenge both the correctness of the overpayment determination and a decision regarding the applicability of waiver must exhaust the administrative

11

process as to each of these claims.

In determining whether Plaintiff exhausted her administrative remedies as to the overpayment attributable to AG, the Court must determine whether Plaintiff followed each step of the administrative process for each of AG's claims—the determination of (1) overpayment ("AG's Overpayment Claim"); and (2) waiver ("AG's Waiver Claim"). The Commissioner failed to address whether Plaintiff exhausted her administrative remedies as to AG's Overpayment Claim.[6] The Motion to Dismiss (Dkt. 12) focuses on Plaintiff's failure to exhaust her administrative remedies as to AG's Waiver Claim. After careful consideration, the Court concludes that Plaintiff exhausted her administrative remedies as to AG's Overpayment Claim but failed to do so with respect to AG's Waiver Claim.

First, regarding AG's Overpayment Claim, the SSA made its initial determination on September 23, 2015. Tr. 77–80. After receiving this determination, Plaintiff filed two requests for reconsideration. In her first request for reconsideration, Plaintiff lists herself as the claimant. Tr. 95. In its first decision on Plaintiff's reconsideration requests, the SSA expressly considered Plaintiff's overpayment claim *and* AG's Overpayment Claim. The SSA stated: "[Y]our overpayment of $20,302.39 is accurate as well as [AG's] overpayment of $13,823.00. Your reconsideration request is denied." Tr. 127–28. Thus, the Court finds that the SSA reconsidered its overpayment determination as to both Plaintiff and AG.

Further, in her second request for reconsideration, Plaintiff again only lists herself as the claimant. However, Plaintiff attaches a letter to her request for reconsideration, wherein she

---

[6] The Commissioner incorrectly states that there was only one issue before ALJ Liken when he made his determination—"the waiver of the overpayment in the amount of $13,693.00 on Plaintiff's own account." Dkt. 12 at 10. However, ALJ Liken considered two issues: (1) whether Plaintiff was overpaid benefits in the amount of $13,693.00, and, if in fact she was overpaid, (2) whether Plaintiff qualified for a waiver. Tr. 16. After reviewing the evidence before him, ALJ Liken concluded that Plaintiff was overpaid but qualified for a waiver of that overpayment. Tr. 16–22.

12

explains that there is "an alleged overpayment of $20,302.30 for [Plaintiff] and $13,823.00 for [AG]." Tr. 130–31. The second request for reconsideration was denied because it addressed "the same issues and facts" as the first request for reconsideration. Tr. 142. Thus, the SSA determined its first decision on Plaintiff's request for reconsideration, which denied both Plaintiff's overpayment claim and AG's Overpayment Claim, was correct. Accordingly, Plaintiff received a reconsideration determination on AG's Overpayment Claim.

The third step in the administrative process required Plaintiff to request a hearing before an ALJ. Plaintiff filed a request for hearing by an ALJ, again listing herself as the claimant and stating that she disagreed with the determination because "the amount shown as overpayment is incorrect. My 2015 and 2016 1099 reflect over $20,000 paid to Social Security. Also my sons [sic] 2015 1099 reflects $1744 paid to social security." Tr. 156. Therefore, the Court finds that Plaintiff requested a hearing regarding AG's Overpayment Claim. At the start of the hearing, ALJ Liken appeared to be under the impression that only the waiver of overpayment issue attributable to Plaintiff was before him. Tr. 28. However, in the opening statement, Plaintiff's counsel identified two issues before ALJ Liken: (1) the overpayment determination; and (2) the waiver of such overpayment. Plaintiff's counsel proceeded to present evidence regarding Plaintiff's attempt to re-enter the workforce—the central issue in determining the accuracy of the overpayment claims for both Plaintiff and AG.[7] Tr. 30–35. In his written decision, ALJ Liken found that Plaintiff had been overpaid benefits in the amount of $13,693.00 but concluded "that [Plaintiff] was without fault in causing the overpayment; that recovery of the overpayment would defeat the purposes of Title II of the Social Security Act; and that recovery of the overpayment in the amount of $13,693.00 [was] . . . waived." Tr. 16. ALJ Liken's written decision is silent as to AG's Overpayment Claim.

---

[7] Because AG was a minor at the time of the overpayment, AG's benefits were tied to Plaintiff's eligibility for benefits.

*See* Tr. 14–22.

Following the hearing and decision, Plaintiff requested review by the Appeals Council because "[t]he decision did not address back pay due my child(ren) who were minors at the time of nonpayment." Tr. 282. The Appeals Council denied Plaintiff's request on the basis that Plaintiff requested waivers for herself—not her children. Tr. 1. The Appeals Council did not address AG's Overpayment Claim, even though Plaintiff requested a hearing before the ALJ on that claim. Tr. 156–57, 233. Thus, Plaintiff exhausted her administrative remedies as to AG's Overpayment Claim. At each step of the administrative process, Plaintiff, as the representative payee for AG, argued that the overpayment amount attributable to AG was incorrect. Plaintiff has done all she could to receive a final determination on AG's Overpayment Claim.

However, Plaintiff failed to exhaust her administrative remedies as to AG's Waiver Claim. Plaintiff did not request a waiver of the overpayment of Plaintiff's benefits to AG and, therefore, the SSA never made an initial determination on AG's Waiver Claim. Tr. 148, 152. Thus, Plaintiff failed to exhaust her administrative remedies as to AG's Waiver Claim.

## IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motion to Dismiss (Dkt. 12) be **GRANTED IN PART** and **DENIED IN PART**. The Court lacks subject matter jurisdiction over Plaintiff's claims regarding the overpayment of benefits to Plaintiff because she received a fully favorable decision resulting in a waiver of overpayment of benefits to Plaintiff. The Court also lacks subject matter jurisdiction over Plaintiff's claim regarding the waiver of the overpayment of benefits to AG because Plaintiff did not fully exhaust her administrative remedies as to this claim. The Court also lacks subject matter jurisdiction over Plaintiff's claims regarding the overpayment of benefits to JG because Plaintiff lacks standing to assert a claim on JG's behalf. Therefore, the

Court recommends that the Motion to Dismiss (Dkt. 12) be **GRANTED** as to such claims. The Court further recommends that such claims be **DISMISSED WITHOUT PREJUDICE**.

The Court further recommends that the Motion to Dismiss (Dkt. 12) be **DENIED** as to Plaintiff's claim regarding the overpayment of benefits to AG because Plaintiff exhausted her administrative remedies as to this claim.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 13th day of February, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE